IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01755-WYD

STEVEN A. MANTHEY,

    Applicant,

v.

ADAMS COUNTY SHERIFF DOUG DARR, and
THE HONORABLE JOHN SUTHERS, ATTORNEY GENERAL FOR THE STATE OF COLORADO,

    Respondents.

## ORDER OF DISMISSAL

WILEY Y. DANIEL, Chief Judge.

    Applicant, Steven A. Manthey, is a prisoner on probation under the supervision of the Adams County Sheriff. He has filed a *pro se* Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 challenging his Colorado state conviction in Adams County District Court Case No. 06CR0254. The Amended Application has been fully briefed by the parties.

    I must construe the Amended Application and other papers filed by Mr. Manthey liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21(1972); *Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir.1991). However, I should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. For the reasons stated below, the Amended Application will be denied, and the action will be dismissed.

I. FACTUAL AND PROCEDURAL BACKGROUND

The Colorado Court of Appeals summarized the facts of Applicant's conviction as follows:

> Defendant, Steven Allen Manthey, appeals the judgment of conviction entered on a jury verdict finding him guilty of two counts of stalking pursuant to section 18-9-111(4)(b)(III), C.R.S. 2008. We affirm.
>
> Evidence was presented at trial that one of the victims, J.S., communicated with other men through internet chat rooms, and eventually communicated with defendant and met him in person. After J.S. and his wife separated, J.S. and defendant continued to communicate regularly. During that time, defendant was seen outside J.S.'s workplace and home, and frequently left gifts or notes at J.S.'s workplace and home. During the same time period, anonymous letters were sent to J.S.'s employers alleging that J.S. used the internet during company time to access chat rooms and engaged in sexual encounters with men. These letters resulted in the termination of J.S.'s employment at two separate companies. Although J.S. asked defendant to cease contact with him, and J.S. and his wife moved to new townhomes and switched cars to avoid defendant, defendant was still frequently observed in the neighborhood, including near J.S.'s son's elementary school, and continued to attempt to contact J.S. by email.

*People v. Manthey*, No. 07CA0863 at 1-2 (Colo. App. March 26, 2009) (unpublished opinion) (Pre-Answer Resp. Ex. E).

The jury convicted Applicant of stalking J.S. and his wife, K.S. The trial court later sentenced Applicant to five years of probation. After the Colorado Court of Appeals affirmed his conviction, Applicant petitioned for certiorari review, which the Colorado Supreme Court denied on September 21, 2009.

On July 23, 2010, Applicant filed an Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court. He filed an Amended Application on October 8, 2010.

2

On November 4, 2010, Magistrate Judge Boyd N. Boland ordered Respondents to file a Pre-Answer Response limited to addressing the affirmative defenses of timeliness under 28 U.S.C. §2244(d) and/or exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A). Respondents filed their Pre-Answer Response on November 24, 2010, conceding that the Amended Application was timely, but arguing that several of the claims were unexhausted in the state courts and should be dismissed as procedurally defaulted. After receiving two extensions of time, Applicant filed a Reply to the Pre-Answer Response on March 3, 2011.

On March 18, 2011, Magistrate Judge Boland entered an order drawing the case to a district judge and a magistrate judge. The case was assigned to my chambers on March 25, 2011. On March 30, 2011, I issued an order dismissing Claim Five as procedurally defaulted. However, finding that Applicant's remaining claims (One, Two, Three and Four) were exhausted in the state courts, I directed Respondents to file an answer fully addressing those claims.

Respondents filed an Answer on April 27, 2011. On April 25, 2011, the state court record was filed in this action. Applicant filed a Reply on May 27, 2011.

II. STANDARD OF REVIEW ON MERITS

28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable

3

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [ (10th Cir. 2006) ] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically

4

> different,' 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House,* 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), I must presume that the state court's factual

determinations are correct and Mr. Manthey bears the burden of rebutting the

5

presumption by clear and convincing evidence.

Additionally, I "owe deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.* Also, pursuant to Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996), I grant deference to state-court decisions that applied a legal standard either identical to the federal standard or more favorable to the habeas applicant than the federal standard. *Patton v. Mullin*, 425 F.3d 788, 795 (10th Cir. 2005).

III. MERITS OF THE CLAIMS

Claims One, Two, Three and Four are the claims remaining at issue in this action.

A. Claims One and Three

In his first and third claims, Applicant asserts Fourth Amendment violations arising out of evidence he alleges was unlawfully seized from his home. Because these claims are related, I find that they properly are addressed together. In his first claim, Applicant argues that evidence was unlawfully obtained from his home because the original search warrant was inadequate. Amended Application at 20-23. In his third claim, Applicant asserts that the search warrant for his home was invalid because

6

it was based on evidence seized during an illegal investigatory detention.  *Id.* at 26-30.  Respondents argue that Applicant's Fourth Amendment claims have been litigated in the state courts and, therefore, that Applicant has already been afforded a full and fair opportunity to argue these claims.

The Fourth Amendment protects against unreasonable search and seizure and is generally enforced through the exclusionary rule.  *See, e.g., Illinois v. Gates*, 462 U.S. 213, 254 (1983); *Stone v. Powell*, 428 U.S. 465, 482-87 (1976).  "The purpose of the exclusionary rule is not to redress the injury to the . . . victim . . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures."  *United States v. Calandra*, 414 U.S. 338, 347 (1974).  Although habeas review is generally available for constitutional violations, *see* 28 U.S.C. § 2254(a), due to the nature of a Fourth Amendment violation and remedy, a federal court's review is limited for alleged Fourth Amendment Violations.  *See Stone*, 428 U.S. at 494.

In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Id.*  This limitation on federal habeas corpus review is grounded on the determination that the purposes behind the exclusionary rule do not require that it be applied during federal habeas review.  *Id.*  The Supreme Court noted that, in the federal habeas corpus context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule

7

persist with special force." *Id.*

Although the Supreme Court has not set forth a precise meaning of the phrase "opportunity for full and fair litigation," the Tenth Circuit has determined that it:

> includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim. It also includes the full and fair evidentiary hearing contemplated by *Townsend* [*v. Sain*, 372 U.S. 293 (1963)]. Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards.

*Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978). "Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court willfully refuses to apply the correct and controlling constitutional standards." *Id.*

It is undisputed that Applicant filed a pre-trial motion to suppress the evidence at issue and received a hearing on the allegations raised in that motion on December 8, 2006. The suppression hearing was continued on January 12, 2007, and again on January 29, 2007, when the trial court issued its ruling denying the motions to suppress. Therefore, I first find that the state court proceedings sufficed to provide Applicant with an opportunity for full and fair litigation of these claims. Second, Applicant has pointed to no authority mandating reversal but ignored by the state court, and I have found none. *See Gamble*, 583 F.2d at 1165.

Finally, while the Colorado state court looked to both state and federal case law in making its decision on Applicant's allegations, the rulings in the cases which were cited are solidly based in Fourth Amendment precedent as set forth by the United States Supreme Court. *See People v. Manthey*, No. 07CA0863 at 4-12. Under this precedent, the state appellate court determined that, based on the entire record before

8

it, there was no constitutional concern present regarding the warrant used to search Applicant's house or the evidence seized during the investigatory detention. Applicant has failed to present any well-pled facts, or any facts at all, from which it can be inferred that the appellate court failed to recognize or "willfully refuse[d] to apply the correct and controlling constitutional standards" in this regard, and no such evidence is apparent from the record. *See Gamble*, 583 F.2d at 1165. Applicant merely disagrees with the result, and would like this Court to reconsider these issues *de novo*. However, that is not the function of a federal habeas court nor an appropriate review to be undertaken in a federal habeas case. Accordingly, I find that Applicant is not entitled to federal habeas review of his Fourth Amendment claims, and Claims One and Three must be dismissed.

    B.    Claim Two

In his second claim, Applicant asserts that his conviction was obtained illegally through the use of evidence gathered pursuant to an unconstitutional custodial interrogation. Amended Application at 23-26. In addressing this claim, the state appellate court concluded:

> Defendant next contends the trial court erred in denying his motion to suppress statements he made to officers during the investigatory stop. We disagree.
>
> Under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966), statements made by a defendant when he is in custody and that are the product of police interrogation are inadmissible unless the defendant was advised of certain constitutional rights and waived those rights.
>
> The determination of whether an individual is in custody at the time of questioning is a mixed question of law and fact. Therefore, we defer to the trial court's findings of fact if supported by the record, but review de

9

> novo its application of legal standards to those findings. *People v. Matheny*, 46 P.3d 453, 462 (Colo. 2002).
>
> A defendant is in custody if "a reasonable person in the suspect's position would consider himself deprived of his freedom of action in a significant way at the time of questioning." *People v. Breidenbach*, 875 P.2d 879, 885 (Colo. 1994).
>
> Generally, a suspect is not in custody for purposes of *Miranda* during an investigatory stop because it involves a brief detention and a less threatening atmosphere than a traditional custodial police interrogation. *Id.* at 885-86.
>
> The officers testified that during the encounter with defendant following the second stop, (1) defendant was not handcuffed or restrained; (2) the officers' voices and demeanor were conversational; (3) the officers did not use coercion or intimidation; and (4) the officers let defendant drive himself, in his own car, to the park to use the restroom. Therefore, we conclude the trial court did not err in denying defendant's motion to suppress because the record supports the trial court's findings that defendant was not in custody when he made the statements to the officers, and therefore *Miranda* warnings were not necessary.

*People v. Manthey*, No. 07CA0863 at 11-12.

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. For that reason, police must advise suspects of their *Miranda* rights prior to custodial interrogation. *Miranda*, 384 U.S. at 467-68. A defendant's waiver of his *Miranda* rights must be voluntary, knowing and intelligent. *Id.* at 444.

However, *Miranda* applies only when a suspect is "in custody." *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008). A suspect is in the "custody" of police when he is "deprived of his freedom of action in any significant way or his freedom of action is curtailed to a degree associated with formal arrest." *Id.* (quotations and citations omitted). The question is whether, under the totality of the circumstances, "a

10

reasonable person in the suspect's position would have understood the situation as the functional equivalent of formal arrest." *Id.* (quotations and alterations omitted).

The Tenth Circuit has set forth several factors which are relevant to the custody determination, including whether the nature and length of the officers' questioning was accusatory or coercive and whether the police informed the defendant that he was free to decline to answer the officers' questions or that he could end the interview. *See United States v. Revels*, 510 F.3d 1269, 1275 (10th Cir. 2007). In addition, the Tenth Circuit directs the habeas court to consider whether the circumstances demonstrated a "police-dominated atmosphere," which turns on the following factors:

> [S]eparation of the suspect from family or colleagues who could offer moral support; isolation in nonpublic questioning rooms; threatening presence of several officers; display of a weapon by an officer; physical contact with the subject; and an officer's use of language or tone of voice in a manner implying that compliance with the request might be compelled.

*Stemple v. Workman*, 2011 WL 1226902, at *3 (10th Cir. April 4, 2011) (unpublished opinion) (quoting *United States v. Jones*, 523 F.3d 1235, 1240 (10th Cir. 2008)).

Having carefully reviewed the record, I conclude that, under the facts of this case, Applicant was not in police custody at the time he made the statements at issue. According to the testimony presented at the suppression hearing on December 8, 2006, the police officers did not use any physical restraints to limit Applicant's freedom of movement during the investigatory stop. *See* Trial Court Transcript, 12/8/2006, p. 19-22. Applicant was not handcuffed and the record does not demonstrate that he was touched by the police officers in any threatening manner. *Id.* The police officers did not use or display weapons and they made no threats, but spoke to Applicant calmly and in

11

a conversational manner. *Id.* Finally, as noted by the Colorado Court of Appeals, Applicant was allowed to leave the scene to drive himself to a nearby park to use the restroom. *Id.* These facts relied upon by the Colorado courts support the finding that Applicant was not in custody. There is simply no indication that Applicant was in a "police dominated" atmosphere at the time of the questioning. *Stemple*, 2011 WL 1226902, at *3. Therefore, I find that the Colorado Court of Appeals' conclusion with respect to Applicant's *Miranda* claim is not an unreasonable application of Supreme Court precedent, nor an unreasonable determination in light of the facts presented. Accordingly, Applicant is not entitled to federal habeas relief on this claim and Claim Two must be dismissed.

    C.    Claim Four

In his fourth claim, Applicant contends that the prosecution withheld key evidence and discovery until the middle of the trial, in violation of his due process right. Amended Application at 31-33.

In addressing this claim, the appellate court determined:

> We next consider defendant's contention that the trial court erred in refusing to impose "meaningful sanctions" for the prosecution's numerous delays and discovery violations. Because defendant does not establish he was prejudiced, we reject his contention.
>
> "The choice of an appropriate sanction for a violation of a discovery rule lies within the sound discretion of the trial court." *People v. Daley*, 97 P.3d 295, 298 (Colo. App. 2004). "An order imposing sanctions will not amount to an abuse of discretion unless it is manifestly arbitrary, unreasonable, or unfair." *Id.*
>
> When fashioning sanctions for a discovery violation, the court should consider (1) the reasons the disclosure was not made; (2) the extent of the prejudice, if any, to the opposing party; (3) the feasibility of rectifying that prejudice by continuance; and (4) any other relevant

> circumstances. *Id.* The trial court should impose the least severe sanctions that will remedy the violation. *Id.*
>
> After defendant made numerous complaints of untimely discovery, the trial court found that there had been "some delay in producing information," but that it did not have "anything to do with [the prosecutor] or his office." After continuing the trial for unrelated reasons, the court noted that the parties should review the discovery and determine when each piece was produced, and, if a piece was untimely produced and a showing of prejudice could be made, its admissibility would be ruled on during the trial.
>
> Defendant contends the trial court should have imposed more meaningful sanctions for the prosecutor's failure to timely disclose thousands of pages of discovery produced at the suppression hearing, certain tape recordings seized from defendant's home, and an envelope that contained a letter written to J.S.'s mother-in-law.
>
> However, at trial: (1) defense counsel conceded she could not establish prejudice as to the documents turned over at the suppression hearing; (2) defense counsel had one of the tapes reformatted because it was inaudible, and had a "better version" of the transcript than that provided by the police; and (3) the trial court excluded the envelope. Therefore, because defendant has failed to indicate how the belated production of these items prejudiced his case, *see Salazar v. People*, 870 P.2d 1215 (Colo. 1994) (failure to comply with discovery rules not reversible absent demonstration of prejudice), we find no error.
>
> Additionally, we are not persuaded prejudice can be established by defendant's assertion that untimely disclosure of the original envelope prevented him from testing it for fingerprints or DNA, because speculation regarding the possible exculpatory effect if evidence were available for testing is not sufficient to establish prejudice. *See Daley*, 97 P.3d at 299.

*People v. Manthey*, No. 07CA0863 at 12-14.

In *Brady v. Maryland,* 373 U.S. 83, 87 (1963), the Supreme Court held that the failure to disclose exculpatory evidence violates due process "irrespective of the good faith or bad faith of the prosecution." However, "[t]he United States Constitution, as interpreted by *Brady*, does not require the prosecution to divulge every possible shred of information that could conceivably benefit the defendant." *United States v. Kennedy*,

13

29 F.Supp.2d 662, 680 (D. Colo. 1998) (citing *Moore v. Illinois*, 408 U.S. 786, 795 (1972) (finding "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.")).

Instead, a habeas applicant seeking relief for a *Brady* violation must establish that: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007) (quoting *Snow v. Sirmons*, 474 F.3d 693, 711 (10th Cir. 2007)). Favorable evidence "is material . . . if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (citation and internal quotations omitted). A "reasonable probability" of a different result exists when the suppression of evidence "undermines confidence in the outcome of the trial." *Id.* at 434. Therefore, the question is not whether disclosure of the suppressed evidence would have more likely than not resulted in a different verdict, but whether in its absence, defendant received a fair trial, *i.e.*, a trial which resulted in a verdict worthy of confidence. *Id.* Courts must "evaluate the materiality of withheld evidence in light of the entire record in order to determine if the omitted evidence creates a reasonable doubt that did not otherwise exist." *Trammell*, 485 F.3d at 551 (internal quotation marks and citations omitted).

In this case, Applicant argues that:

> The discovery violations in this case were rampant and often with the apparent attempt to break the will and back of the defense . . . . The failure to provide disclosure even extended to the prosecutor. As noted above, [K.S.'s] mother, Mrs. Simons, testified that she did give the prosecutor the <u>original letter and envelope sealed in a plastic bag prior to the first trial</u>

14

> setting. The prosecutor's failure to keep and produce these key items until
> the middle of trial precluded DNA testing prior to trial. The mere exclusion
> of the Simons' envelope was not a sanction.

Amended Application at 31-32 (emphasis in original). Applicant further argues that:

> The police and the prosecution violated both the letter and spirit of Rule 16
> of the Colorado Rules of Criminal Procedure and the basic Fifth
> Amendment due process rights of this Petitioner. The People withheld
> key pieces of evidence until the middle of trial. The police and the
> prosecution in this case chose which items to produce when, and played a
> "cat with string" game where defense counsel is forced to chase the string
> around, never reaching the end. The People produced the discovery in
> this case only when they had to do so.

*Id.* at 32-33 (emphasis in original).

First, with respect to Applicant's argument that the alleged discovery violations violated Rule 16 of the Colorado Rules of Criminal Procedure, federal courts do not grant habeas relief for errors of state law. *See Estelle*, 502 U.S. at 67. This is because "[f]ederal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Thornburg v. Mullin*, 422 F.3d 1113, 1128-29 (10th Cir. 2005). Second, in the Amended Application, Applicant fails to identify any crucial evidence, other than the envelope, that was withheld by the prosecution or the police department. Instead, Applicant focuses on the prosecution's failure to timely disclose the envelope.

The significance of the envelope was set forth in Applicant's opening brief on appeal as follows:

> During trial, [K.S.'s] mother, Ms. Simons, testified that she received
> an anonymous letter in 2004 that [J.S.] was gay and that he was having

15

> unprotected sex with men . . . . When asked in cross-examination about the envelope in which the letters were included, Ms. Simons stated that she had brought the original envelope to the prosecution. [citations omitted].
>
> . . . .
>
> During the lunch break, the prosecutor Mr. Stumpf told the Trial Court that there was not a failure to provide discovery on this original envelope because he had never had it before. The Trial Court ruled that the envelope would not come into evidence.
>
> . . . .
>
> [The prosecutor] then represented to the trial court, again in a sidebar conference over the objection of defense counsel, that he had forgotten that Ms. Simons had provided [the envelope] and it was really no big deal anyhow. Yet it was undisputed that the production of the envelope, <u>during trial</u>, did not allow for any testing for fingerprints, DNA, etc.

Pre-Answer Response, Ex. B2 at 24-26 (emphasis in original).

Applicant asserts that he was prejudiced by the prosecution's failure to timely disclose the envelope because he would have had "the envelope seal tested for DNA to exonerate him." Amended Application at 32. However, Applicant fails to demonstrate that the envelope was material, because he has not demonstrated "a reasonable probability that, had [the envelope] been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433. Materiality depends upon the circumstances; when a habeas applicant's claim rests on an alleged *Brady* violation, relief is not warranted if his "conviction is supported by overwhelming evidence of guilt." *Case v. Hatch,* --- F.Supp.2d ----, 2011 WL 1126335, at *13 (D.N.M. March 28, 2011) (citing *Leka v. Portuondo*, 257 F.3d 89, 104 (2nd Cir. 2001)). That is, "[w]ithheld favorable evidence . . . , in a context where the undisclosed material could have been

16

used to render the evidence of guilt ambiguous[,] has a more significant impact than where the evidence of guilt is otherwise ample." *Id.* (citing *Spicer v. Roxbury Corr. Inst.*, 194 F.3d 547, 561 (4th Cir. 1999)). In this case, I find that the evidence of Applicant's guilt was ample.

Applicant was convicted of stalking pursuant to Colo. Rev. Stat. § 18-9-111(4)(b) (2008). The jury was instructed that the elements of the crime of stalking were: (1) that the defendant, (2) in the State of Colorado, at or about the date and place charged, (3) knowingly, (4) directly, or indirectly through another person, (5) repeatedly, (6) followed, approached, contacted, placed under surveillance or made any form of communication with, (7) [J.S.], (8) in a manner that would cause a reasonable person to suffer serious emotional distress, and (9) did cause [J.S.], (10) to suffer serious emotional distress. *See* Colo. Rev. Stat. § 18-9-111(4)(b) (2008); *see also* Trial Court Record, Jury Instruction No. 11, p. 56.

At trial, J.S. testified that, after he ended his relationship with Applicant, Applicant was frequently observed in J.S.'s neighborhood, and repeatedly contacted J.S. by email and telephone. Trial Court Transcript, 2/12/2007, p. 166-175. J.S. also testified that he moved to a new home in order to avoid Applicant, but still observed Applicant driving near his new house. *Id.* J.S. stated that he was in constant fear of Applicant. *Id.* at 178-79. Further, police officers found surveillance logs in Applicant's car that contained extremely detailed observations of J.S.'s and K.S.'s activities, movements and whereabouts. *See* Trial Court Record, People's Exhibit 16. The surveillance logs held voluminous notes indicating that Applicant was repeatedly contacting J.S., and other members of his family, and that Applicant was driving by J.S.'s house and making notes

of his whereabouts up to seven times per day. *See id.*

Considering all of the above, I find that Applicant's convictions for stalking J.S. and K.S. are "supported by overwhelming evidence of guilt." *Case*, 2011 WL 1126335, at *13. Even assuming that DNA evidence from the envelope demonstrated that the letter was not sent by Applicant, there was ample evidence aside from the letter for a reasonable jury to convict Applicant of stalking J.S. and K.S. Therefore, Applicant's claim that the early disclosure of the envelope would have altered the course of the jury's decision is no more than speculative. *See Sandoval v. Ulibarri*, 548 F.3d 902, 915 (10th Cir. 2008) (rejecting a *Brady* claim where appellant's argument that a medical report would have been exculpatory was merely speculative). Applicant has failed to establish that the prosecution's untimely disclosure of the envelope "undermines confidence in the outcome of [his] trial." *Kyles*, 514 U.S. at 434.

I find that the Colorado Court of Appeals' conclusion with respect to Applicant's *Brady* claim is not an unreasonable application of Supreme Court precedent, nor an unreasonable determination in light of the facts presented. Accordingly, I find and conclude that Applicant is not entitled to federal habeas relief on his fourth claim.

IV. Conclusion

I find that Applicant is not entitled to relief on any of his claims, and that his Amended Application for a Writ of Habeas Corpus must be dismissed. Accordingly, it is

ORDERED that Applicant Steven A. Manthey's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 9) is **DENIED** and the action is

**DISMISSED WITH PREJUDICE**.  It is further

ORDERED that no certificate of appealability will issue because Mr. Manthey has not made a substantial showing of the denial of a constitutional right.

Dated this <u>8th</u> day of August, 2011.

BY THE COURT:

<u>s/ Wiley Y. Daniel</u>
WILEY Y. DANIEL,
CHIEF UNITED STATES DISTRICT JUDGE